STATEMENT OF OFFENSE

Leading up to March 20, 2017, Detective Timothy Palchak, was acting in an undercover capacity ("UC") as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force. The UC had posted numerous online bulletin messages on specific social media forums, which, based on the UC's experience and information gathered from other sources, are websites that are frequented by individuals who have a sexual interest in children and incest. The bulletin messages were intended to attract individuals with a sexual interest in children. The UC would respond to certain messages or post messages on these public forums and provided his UC email account information and KIK messenger screen name. KIK messenger (herein "KIK") is a free mobile application that permits users to send text messages and other content, including videos and images.

On March 20, 2017, the defendant responded to the UC's advertisement via the website's email. The defendant stated, "What are you into? I dont drive but would love to meet up and perv out. Lol."[1] The defendant stated that he likes to "show dick and jerk off and cum" and would do so with any age. The UC indicated his daughter is 9 years old, The defendant went on to say, "Is she there now? Where are you located? Would you take me to your place and leave us alone and i record?"

The defendant provided his cellular phone number to the UC and the two began to chat via text messaging. Over the next several days, the defendant engaged in a text message chat with the UC.

On March 20, 2017, the defendant initiated a text exchange with the UC in which he advised the UC that he would provide the UC "other pics of kids" as barter for access to the UC's

---

[1] All text abbreviations and typographical errors in quoted text language are original.

1

purported 9-year-old child. Specifically, the defendant advised that he wanted to meet the UC and his child that night, questioning whether the UC could "get her sooner" because "Im trying to meet tonight." During the course of their conversations, the defendant indicated that he had previously engaged in sexual contact with minors, advising the UC that he was "experienced with all ages." The defendant specifically noted that he had engaged in sexual contact with a 7-year-old female child two years prior.

During the text exchange, the defendant asked the UC if he was comfortable with the defendant smoking "420"[2] at the UC's home, specifically requesting that they "smoke some 420 with her." While the defendant and the UC were discussing the specifics, they engaged in the following text colloquy:

| | |
|---|---|
| UC: | U seemed concerned if your uncomfortable i understand and it's all good |
| Defendant: | Im cool.  Just dont know how trustworthy she or you are.  No disrespect |
| UC: | I feel the same about u for real |
| UC: | I have the most to lose |
| UC: | And no disrespect |
| Defendant: | So were on the same page.  As long as everything work out then ok |

Shortly thereafter, the defendant requested that the UC produce a video of him and his purported 9-year-old daughter to confirm she was real. The defendant specifically requested that the UC send a "[v]ideo of her sucking." He further advised that the video did not need to be "long but just to see if this is real."

The following day, the UC and the defendant resumed their texting communications. The defendant expressed his desire to meet with the UC and his purported 9-year-old daughter, reassuring the UC that there was no reason to be nervous:

| | |
|---|---|
| Defendant: | We still meeting up today |
| Defendant: |  3:30. Where do i meet you at? |
| Defendant: |  Im looking to do this i don't want you to be nervous.  Im serious i got the 420 and all.  Everything cool on this end. |

---

[2] The UC understood "420" to be a reference to marijuana.

    Defendant:    Give me a call when you get off.  I want you to know im serious and still trying to come pass with you and her

On March 23, the defendant continued chatting with the UC and offered to send him images and videos of "some young boys" that ranged in age between 11 and 15 years old.  The defendant indicated that the videos were of children from the surrounding area, specifically the Washington, D.C., Maryland, and Virginia area.  When the UC asked the defendant where "the first one" lived, the defendant responded Hampton, Virginia, and that he had his address and videos "but not for free."  The UC followed up and the defendant indicated that he needed "200" and could "verify all the info to.  He sucks and gets fucked.  He never tried cum."  Shortly thereafter, the defendant asked the UC for his email address so that he could send him "stripping videos" of the male 11-year-old child.

The defendant and the UC continued their conversation, where they discussed the type of "play" the defendant had engaged in with the male child.  The defendant indicated that he had met the child three times and during those encounters he "got sucked, fucked him, and he jerked me off and cum on his face."  The defendant offered to allow the UC to "play" with the 11-year-old child for two hours in exchange for $150.  The defendant and the UC continued to negotiate a pickup location and whether the UC would be paying for the 11-year-old child's information or for "sex" as well.  During their negotiations, the defendant indicated that he had "been doing this for years" and didn't "need anybody to mess up how i run my stuff."

In addition to offering the 11-year-old boy, the defendant indicated to the UC that he also had another male child that was 12-years-old.  The defendant described the boy as a "thick blk 12" and advised that "[h]e gets fucked and he suck."  The defendant and the UC continued discussing other children and the defendant stated that he had an "account where i talk to kids little ones.  It has pics, videos, etc. . . ."  For the remainder of March 23, 2017, the defendant and the UC

negotiated what images and videos the defendant would send the UC, reaching an agreement that if the UC was into "boy" the defendant would "have a nice size collection" for the UC.

The defendant and the UC resumed their conversations on March 29, 2017. The defendant again advised the UC that he had videos of "young boys sucking dick and young girls sucking and one get cum in mouth" for sale. The defendant agreed to meet the UC at a bar in DC. On March 29, 2017, the defendant arrived at the meet location as planned. The defendant entered the meet location and sat down with the UC at the bar. After confirming the UC brought money with him, which the UC showed the defendant he had in his pants' pocket, the defendant proceeded to show the UC videos depicting child pornography on the defendant's cellular telephone. The defendant then emailed five videos depicting child pornography to the UC at an email address provided by the UC. The UC received the videos on his cellular phone. The videos depicted the following:

- A 27-second video depicting a prepubescent male child sucking an adult male penis.
- A 17-second video depicting a prepubescent female child masturbating and sucking a male penis, which ejaculates in the child's mouth.
- A 59-second video depicting a female prepubescent child sucking a prepubescent male's penis while an adult male applying lubricant to the anus of the same female child.
- A 34-second video depicting a prepubescent boy being masturbated by what appears to be an adult hand, which also rubs the boy's buttocks.
- A 30-second video depicting a prepubescent male child sucking the penis of an adult male.

After sending the UC above-described videos, the defendant was arrested by the FBI and his cellular phone seized. The defendant was interviewed and admitted to sending the UC the videos depicting child pornography in order to obtain money. The defendant admitted he had met a man on a website who had a 9- or 10-year-old daughter whom he would allow the defendant to

4

sexually abuse. The defendant stated that he intended on getting money from the man, and tried to get the man to meet with the defendant to pay for sexual acts with a 15-year-old boy to whom the defendant has access. The defendant admitted he tried to sell the UC videos depicting child pornography, which the defendant admitted he had obtained online. The defendant also admitted he had sent the UC a screen shot of child pornography video, and then arranged to meet the UC to sell the video to him. The defendant stated that the arrangement he told the UC was that it would cost $150 to buy the child pornography videos. The defendant stated that he intended to blackmail the UC after the sale for additional money. Defendant admitted that he knew the videos were child pornography because the kids looked younger than 13, and that he knew having these videos was illegal. The defendant denied ever touching any kids in a sexual way.

A detective with the MPD/FBI Child Exploitation Task Force also identified the child depicted in the images the defendant sent the UC, which the defendant purported depicted a 15-year-old boy that the defendant had sexually abused. The detective interviewed the child on March 29, 2017. The child indicated that he had met the defendant on the internet and verified communicating with the defendant by google hangout. The child stated that the defendant had propositioned him to have sex for money with another man the defendant had met online (the UC), and to whom the defendant wanted to sell the opportunity to engage in sex acts with the child. The child indicated that the defendant had posed to the child as a teenager himself when he tried, via google hangout, to persuade the child to engage in the sex acts with the UC for money. The child also indicated that the defendant had instructed the child to take pictures of his own penis and send them via google hangout to the defendant, which images the child did in fact take and sent to the defendant via google hangout.

 

_____
Special Agent Laura Calvillo
Federal Bureau of Investigation


Sworn and subscribed to before me this 30th day of March, 2017


_____
Robin M. Meriweather
United States Magistrate Judge